# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JASON ESPINOSA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07 C 231 |
| | ) |
| PHILIP MORRIS USA, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Philip Morris USA, Inc.'s and Defendant R.J. Reynolds Tobacco Company's (collectively referred to as "Defendants") motion to dismiss. For the reasons stated below, we grant the motion to dismiss and dismiss the instant action.

## BACKGROUND

Plaintiff Jason Espinosa ("Espinosa") alleges that Defendants manufacture and sell cigarettes containing nicotine. Espinosa claims that it was discovered that tobacco companies, such as Defendants, intentionally increased the "nicotine delivery and absorption of their cigarettes into the human body targeting cigarette brands, among others, of youth smokers, in order to make new smokers more easily

1

addicted." (Compl. Par. 22). Espinosa contends that he started purchasing cigarettes in 1996 when he was fourteen years old and has purchased four to five packs of cigarettes per week since that time. (Compl. Par. 25). Espinosa brought the instant action in Illinois state court on behalf of himself and a proposed class of cigarette users. Espinosa includes in his complaint a claim alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Fraud Act"), 815 ILCS 505/1 *et seq.* (Count I), a breach of express warranty claim (Count II), a breach of implied warranty of merchantability claim (Count III), a breach of contract claim (Count IV), a fraudulent concealment claim (Count V), a negligence claim (Count VI), and a declaratory judgment claim (Count VII). Defendants subsequently removed the instant action to federal court pursuant to the Class Action Fairness Act, which is codified in part at 28 U.S.C. § 1332(d). On March 26, 2007, we denied Espinosa's motion to remand. Defendants Philip Morris USA Inc. ("PM") and R.J. Reynolds Tobacco Company ("RJR") now move to dismiss all claims brought against them.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002);

*Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail . . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The

Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

Defendants argue that all of the claims brought by Espinosa are preempted by the Federal Cigarette Labeling and Advertising Act ("FCLAA"), 15 U.S.C. § 1331 *et seq.* Article VI of the United States Constitution states that the "laws of the United States 'shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'" *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)(quoting in part Art. VI, cl. 2). Thus, when state law conflicts with federal law, the state law is "'without effect.'" *Id.* (quoting in part *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981)). There are three instances when federal law can pre-empt state law: "(1) when the federal statute explicitly provides for preemption; (2) when Congress intended to occupy the field completely; and (3) 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 918 (7th Cir. 2007)(quoting in part *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64-65 (2002)).

Espinosa argues that there is a presumption that the FCLAA does not preempt state law. (Ans. 3). However any such presumption is deemed to be "rebutted where

. . . Congress has made its preemption intention clear in the language of the statute" at issue. *Melton v. Melton*, 324 F.3d 941, 945 (7th Cir. 2003)(citing *Egelhoff v. Egelhoff*, 532 U.S. 141, 151 (2001)). In regards to the FCLAA, Congress has provided that the FCLAA was enacted in order "to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health. . . ." 15 U.S.C. § 1331. The FCLAA also provides that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b). Thus, Congress has expressed a clear intention to preempt state law in regards to cigarette labeling and advertising and their connection to the health of cigarette consumers, which, as is explained below, is directly tied to all of Espinosa's claims. Therefore, any presumption against a finding of preemption would be rebutted in this case.

I. Failure to Warn Related Claims (Counts I, V, and VI)

Defendants contend that the claims in Counts I, V, and VI are based upon an alleged failure by Defendants to warn cigarette consumers about the increased risk to the consumers' health due to the change in the composition of Defendants' cigarettes. The FCLAA preempts state law that relies on a "requirement or prohibition . . . with respect to . . . advertising or promotion," and thus the FCLAA preempts state claims that are based upon a "failure-to-warn theory" that "require[s]

a showing that" cigarette "advertising or promotions should have included additional, or more clearly stated, warnings. . . ." *Cipollone*, 505 U.S. at 524.

### A. Fraud Act Claims (Count I)

Espinosa alleges in Count I that Defendants violated the Fraud Act. Count I is based upon the allegation that "Defendants each deceptively, unlawfully and fraudulently refrained from informing Plaintiff and the Class that the Defendants each continually and purposefully increased the nicotine delivery and absorption of the cigarettes they sold and marketed to Plaintiff and the Class." (Compl. Par. 28). Espinosa thus references an alleged failure of Defendants to warn cigarette consumers. Espinosa also contends that alleged changes in composition of the cigarettes had adverse health consequences because it made it easier to become "addicted" to cigarettes. (Compl. Par. 30). Thus, the claims fall within the scope of the purpose of the FCLAA that was to address "cigarette labeling and advertising with respect to any relationship between smoking and health. . . ." 15 U.S.C. § 1331. Espinosa also makes clear that the alleged failure to warn by Defendants involved Defendants' "advertising, packaging, and media statements. . . ." (Compl. Par. 17). That places Espinosa's claims squarely within the FCLAA's preemption clause that preempts state law "with respect to the advertising or promotion of any cigarettes. . . ." 15 U.S.C. § 1334(b). Finally, Espinosa alleges that he and the proposed class members were harmed because they were not properly warned of the changes in the composition of the cigarettes. (Compl. Par. 31). The Fraud Act claim is thus clearly

6

based upon warnings that Espinosa contends should have been provided to cigarette consumers regarding the alleged increase in the nicotine delivery and absorption of the cigarettes and its effects upon the consumers' health. Espinosa argues in regards to Count I that "[o]nly if a claim imposes a specific duty 'based on smoking and health' can it possibly be preempted." (Ans. 5). However , Count I is clearly based upon such a duty. Espinosa specifically alleges that Defendants failed to extend specific information relating to the composition of Defendants' cigarettes and thus alleges that Defendants failed to warn cigarette consumers about adverse risk to their health. Espinosa tries to characterize the duty upon which Count I is based as a "general obligation not to deceive," and argues that "[t]his is not a failure to warn case." (Ans. 5, 8). The basis of Espinosa's claim in Count I is that Defendants are liable because their cigarette advertisements and promotions did not include certain information and if such information was included in the advertisements it would have constituted a warning to consumers about a risk to their health. To the extent that Espinosa seeks to align his claims with the exception mentioned in *Cippolone* that referenced fraud by an intentional misrepresentation, such an exception is not applicable in the instant action. 505 U.S. at 527-29. The allegations in Espinosa's complaint only allege an omission of information and there are no facts that indicate that Defendants intentionally and affirmatively misrepresented the composition of their cigarettes.

Espinosa also argues that he is not seeking to "impose greater warning requirements in [D]efendants' advertising or promotions." (Ans. 8). While Espinosa

7

is not explicitly requesting that the statutory requirements for warnings be heightened, Espinosa is seeking to hold Defendants liable for not providing certain warnings and thus Espinosa is indirectly attempting to impose new warning requirements on Defendants. Defendants correctly point out that "[a]s a practical matter, the only way for Defendants to avoid liability under Espinosa's theories of Illinois law would be to provide additional statements relating to smoking and health beyond the Congressionally-mandated Surgeon General warnings." (Reply 2-3). Espinosa's claims in Count I are directly tied to concerns about cigarette customers' health due to the alleged increased risk of addiction. The Fraud Act claims in Count I are thus exactly the type of failure to warn claim that is preempted by the FCLAA and we grant the motion to dismiss the Fraud Act claims. (Count I).

B. Fraudulent Concealment Claims (Count V)

Espinosa indicates in Count V that he is bringing a fraudulent concealment claim. Count V is based upon the allegation that "Defendants affirmatively concealed from Plaintiff and other members of the Class" the alleged change in the composition of the cigarettes. (Compl. Par. 49). Espinosa contends that the composition of the cigarettes was adverse to the cigarette consumers' health and "Defendants never disclosed" that they had changed the composition of the cigarettes. (Compl. Par. 50). The essence of the fraudulent concealment claims are thus that Defendants fraudulently concealed information about the composition of the cigarettes, which should have been provided to consumers in a warning so that

the consumers could make an informed choice about purchasing the cigarettes. Espinosa also contends that he and the proposed class were harmed due to the lack of a warning and concealment of information. (Compl. Par. 54). Such a theory is a failure to warn theory tied to Defendants' cigarette advertising and promotions and cigarette consumers' health that is preempted by the FCLAA. Therefore, we grant the motion to dismiss the fraudulent concealment claims. (Count V).

### C. Negligence Claims (Count VI)

Espinosa asserts negligence claims in Count VI. The negligence claims are based upon the allegation that "Defendants had a duty to warn Plaintiff and the Class that they were manipulating and increasing the nicotine delivery and absorption of their cigarettes into the human body. . . ." (Compl. Par. 57). Espinosa contends that he and the proposed class were harmed due to the lack of a warning by Defendants. The negligence claims are thus the type of failure to warn claim that is tied to Defendants' cigarette advertising and promotions and cigarette consumers' health and is pre-empted by the FCLAA. Therefore, we grant the motion to dismiss the negligence claims. (Count VI).

## II. Contract-Based Claims (Counts II, III, and IV)

Defendants contend that the contract-based claims in Counts II, III, and IV are also preempted by the FCLAA because they are all based upon a breach of an obligation by Defendants to disclose the composition change in their cigarettes. As

9

will be explained below, Espinosa's contract-based claims are nothing more than reconstituted versions of his other claims that are all tied to the omission of warnings in Defendants' advertisements and promotions relating to cigarette consumers' health. Espinosa argues that his contract-based claims "sound in contract rather than tort. . . ." (Ans. 10). We disagree. Characterizing Espinosa's claims as being based on a breach of a duty to disclose does not change the fact that the essence of the claim is that Defendants breached a duty to warn. Any tort injury can be re-characterized in a format to depict protection of one party as an agreed term and a harm as a breach of the implied contract, but that does not mean that the essence of the claim is altered or that a plaintiff can pursue a breach of contract claim in every tort action. The Seventh Circuit has made clear that a plaintiff cannot avoid the preemption of the FCLAA by creatively wording a claim and entitling the claim with a cause of action that is not normally preempted by the FCLAA. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1042 (7th Cir. 1999)(stating that a plaintiff cannot "skirt th[e] pit" of preemption with artful pleading and that the court should consider the "natural characterization of the claim" when determining whether the claim is pre-empted by the FCLAA).

    A.  Warranty Claims (Counts II and III)

Espinosa asserts that he is bringing breach of express warranty claims in Count II and breach of implied warranty of merchantability claims in Count III. Count II is based upon Espinosa's contention that Defendants "breached their

express warranty" owed to cigarette consumers by not informing the consumers in "comments to the media and to the public" of the change in the composition of Defendants' cigarettes. (Compl. Par. 33, 35). Count III is based upon Defendants' alleged breach of the implied warranty of merchantability due to the fact that Defendants "impliedly warranted" that Defendants' cigarettes were of a certain composition and failed to warn consumers of the composition changes. (Compl. Par. 40). Espinosa also alleges that he and the proposed class were injured by the failure of Defendants to inform the public of the composition changes. (Compl. Par. 37, 44). Counts II and III are nothing more than the negligence claims cast in a different light using the concepts "breach of an express warranty" or "breach of the implied warranty of merchantability" rather than "breach of a duty to warn." (Par. 35, 42, 57). Although Espinosa tries to tie Counts II and III to an alleged warranty formed between Defendants and cigarette consumers, the essence of the claim continues to be that the consumers were injured because Defendants failed to inform the consumers in advertisement or promotions of the change in the composition of Defendants' cigarettes, which had an adverse impact on the consumers' health. Therefore, we conclude that the breach of express warranty claims and breach of the implied warranty of merchantability claims are preempted by the FCLAA and we grant Defendants' motion to dismiss the express warranty claims (Count II) and the implied warranty of merchantability claims (Count III).

B. Breach of Contract Claims (Count IV)

Espinosa asserts that he is bringing breach of contract claims in Count IV. Espinosa asserts in Count IV that Defendants extended a contractual offer to the public for the purchase of cigarettes through advertisements and promotions and part of that offer impliedly included that the cigarettes would be cigarettes "without increased nicotine delivery and absorption. . . ." (Compl. Par. 45). Under Espinosa's contract theory, he and the proposed class accepted the offer by purchasing the cigarettes, and Defendants breached the implied contract by selling cigarettes with an increased nicotine delivery and absorption. (Compl. Par. 47). This claim is nothing more than a new twist on the same claim that is present in all of the claims delineated in the complaint. Instead of stating that Defendants had a duty to warn consumers and failed to warn consumers about the alleged heightened health risk from Defendants' cigarettes, Espinosa has phrased the allegations so as to create a contractual agreement under which Defendants were obligated to look out for the consumers' health. According to Espinosa's contract theory, if Defendants altered the composition of the cigarettes and warned consumers as part of the offer in the advertisements and promotions, the new composition would have been an implied term of the implied contract. Thus, under Espinosa's contract theory, had Defendants warned Espinosa and the proposed class of the new composition of the cigarettes, Defendants would not be liable. The breach of contract claims are thus simply failure to warn claims cast in a different light and are preempted by the FCLAA. Therefore, we grant the motion to dismiss the breach of contact claims. (Count IV).

**CONCLUSION**

Based on the foregoing analysis, we grant Defendants' motion to dismiss all Counts. We also note that although only PM and RJR moved to dismiss the claims brought against them, the above rulings concerning preemption apply equally to the claims brought by Espinosa against the other Defendants as well and we thus dismiss all claims against Defendant Altria Group, Inc. and Defendant Reynolds American Inc. as well. Finally, in accordance with our above ruling concerning preemption, we dismiss the declaratory judgment claim in Count VII as well.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 18, 2007